DECISION
The instant controversy, which was tried to the Court without the intervention of a jury, concerns the interpretation of an easement burdening plaintiffs property and dedicated to the defendant. Plaintiff's condominium association is comprised of six units and located at 36) Thames Street in Newport. Defendant Landing Condominium Association ("LCA") is located across the street at 359 Thames Street and is a large multiunit, timeshare/hotel resort complex.
Plaintiffs condominium declaration specifies that the parking area in question "shall be for the exclusive use of LCA, in satisfaction of the burden on the property to provide parking for the LCA project as set forth in that easement dated May 26, 1998 and recorded.., as amended or corrected from time to time. LCA shall be responsible for all of the expenses of the operation, insurance, maintenance, and repair of said . . . parking area."
From 1990 to 1993, defendant declined to acknowledge plaintiffs invoices for ex, expenditures in the aforementioned easement categories. In mid-1993, after negotiations between the parties took place, defendant made "nominal" payments in 1993, 1997 and 1999. Plaintiff contends that it is fairly owed $68,304. Plaintiff farther prays that the court terminate the parking easement because of LCA's continuing refusal to satisfy the "condition" of paying expenses for the operation, insurance, maintenance and repair of the area. The defendant counters that it is owed a credit of $2,981 and that the easement is not terminable.
Mr. Lawrence Allen, plaintiff's president testified that he, with his wife as members of a real estate holding company purchased two condominium units in June of 1992. Since Mr. Allen was the only unit owner who lived in town, management responsibilities for the association devolved upon him. The subject building, comprised of five stories, has 21 parking spaces on the first level, 18 spaces on the second level, four office condominia on the fourth level, and two residential units on the fifth level. Despite the fact that Mr. Allen embarked upon a course of negotiation with defendant's representatives concerning expense allotment, the parties could not reach a satisfactory resolution. Mr. Allen even suggested arbitration and offered to be bound by an arbitrator's decision. Defendant declined and the difficulties continued. In his testimony, Mr. Allen identified reimbursable items, and the method by which he calculated what sums plaintiff is due.
Newport's Tax Assessor, Allan Booth, Jr., testified that although the parking area is certainly taxed, it is not separately assessed. In Mr. Booth's expert opinion the average fair value of parking space in this area of Thames Street is $10,000 totaling a separate assessment of the 22 spaces at $220,000.
Plaintiffs also presented the expert testimony of Mr. Paul Hogan, a Newport real estate appraiser and broker of 27 years experience. Using the comparable sales approach, Mr. Hogan valued each parking space at $13,000. He did acknowledge, however, that this was the "weakest" of the three traditional appraisal methods, as there had been only two transactions for comparison. When employing the reproduction cost approach, Mr. Hogan, calculated a value of $252,000.
Finally, plaintiffs presented Dr. Chantee Lewis, an expert in economics, real estate, and finance. Dr. Lewis is Professor Emeritus a Bryant College in finance and economics, having served 15 years as that department's chair. In. Dr. Lewis' opinion, the value of each parking space is $8,000. He outlined properly chargeable expenses as including insurance, cleaning and maintenance, cost of lighting, property taxes, condominium association management tees, and art annual depreciation/sinking fund charge of $3,850. Dr. Lewis concluded that the sum owed plaintiff for reimbursement by defendant for use of the area since 1990 is $98,705.
The defense presented Mr. James Mercurio, chief financial officer of Eastern Resorts Co. which manages 12,000 unit accounts including LCA. Mr. Mercurio testified that LCA would arrange for snow removal, cleanup and lighting repairs at 360 Thames.
The attorney who represented the developers of the Landing Condominium at 360 Thames Street, Richard Sayer, also testified for the defendant. Attorney Sayer explained that in order for the development at 359 Thames to be code compliant, 22 parking spaces would have to be allocated to use it. Because LCA benefits from this easement, he testified, it has the burden of paying its fair share of operating maintenance and repair expenses applicable to the area.
The Chief maintenance engineer for LCA, Mr. Arthur Schindler, also testified. He has repaired and cleaned storm drains, repaired fences, performed over night cleanups, monitored sprinklers, changed light bulbs and supervised snow removal on the property. He testified that 360 Thames is billed for his work through LCA.
The defendant's final witness was Newport's former assistant tax assessor, Mr. James Houle. His position was that the purchase price of a unit at LCA included the tight to use parking spaces at 360 Thames and, therefore, no real estate taxes for the parking areas were included in the tax payments made by the 360 Thames unit owners.
Plaintiff urges this Court to terminate the parking easement characterizing such an act as the "cleanest and simplest way to resolve the issues." The basis for termination, plaintiff argues, is that LCA's continuing and intentional refusal to reimburse plaintiff for expenses is a breach of the easement conditions. As authority plaintiff cites Akasuv. Power, 91 N.E.2d 224 (Mass. 1956) in which the Supreme Judicial Court upheld the termination of a right of way for failure to pay annual rent for its use. In that case, however, the language of the grant specified that "the right to use said passage way is on the condition that said grantees and their heirs and assigns shall pay [to me] and my heirs and assigns the sum of fifteen dollars annually, during the time that they shall use the said passage way." The Court noted that an easement may be terminated upon the nonperformance of a condition subsequent, in that instance, a failure to pay. The failure to pay which "could not be divorced from the privilege to use," constituted a breach of condition. The language of the easement in controversy is not so compelling as that in Akasu clearly conditioned the usage of the right of way upon payment. Thus, the court declines to declare the parking easement terminated.
The unambiguous language of the easement squarely places upon LCA the responsibility of all expenses of the operation, insurance, maintenance and repair of the package area. The defendant's interpretation of the terms of the easement are that: (1) defendant has no liability for a real estate tax contribution; (2) defendant owes nothing for insurance coverage; (3) defendant's liability for cleaning and utilities is limited to $498 per year; (4) defendant owes no contribution to a sinking fund. The latter item was raised for the first time by plaintiff at trial. Despite the fact that the lawsuit has been pending since 1993, this item of "expense" was not in controversy until the testimony of Dr. Chantee Lewis was presented at trial. Dr. Lewis is a distinguished Professor Emeritus of Finance with expertise in economics, taxation, real estate appraisal, valuation, and investing. Dr. Lewis reviewed the pertinent business records but characterized them (accurately) as "spotty." He explained that "not all the years were there" and he was "not pleased with it." Nonetheless, the doctor opined that a "sinking fund" was properly included in the expenses of operation. The Court, however, is not satisfied that a fair preponderance of the credible evidence supports such a conclusion. This Court has already declared the easement language to be clear and unequivocal by its plain and ordinary meaning. Remaining unconvinced that such a fund was ever contemplated as part of the parties' bargain, and being mindful that Dr. Lewis was employing an "expanded" definition of expense, the court declines to order any reimbursement for any sums related to a "sinking fund."
The Court holds that defendant is absolutely responsible for its fair share, including taxes of the expense of operating and maintaining the parking spaces from which it exclusively benefits. The Court accepts as credible the testimony of Tax Assessor Booth that the average value of a parking space in the relevant Thames Street area is $10,000. With reference to the maintenance of the sprinkler system, insurance, cleaning, repair maintenance, lighting and management costs, the Court endorses Mr. Mercurio's percentage, calculated by sprinkler heads, of 19% (rounded off). The parking area protected by the sprinklers is the area which should be otherwise maintained by and chargeable to the defendant
The Court enters judgment for the plaintiff and requests it to recalculate the damages outlined in Appendix D, consistent with this opinion. The sinking fund charge and statutory interest must be deleted and the percentage calculations must be reduced to 19%. The Court will await counsel's proposed form of judgment to reflect these modifications in plaintiffs original calculation.